UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEIDRA L. PERRY,

       Plaintiff,                            CASE NO. 04-74209

-vs-                                           PAUL D. BORMAN
                                             UNITED STATES DISTRICT JUDGE

BARRIA MOLINA DELFIN,

       Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      This matter comes before the Court on Defendant Barria Molina Delfin's ("Defendant") Motion for Summary Judgment.

**BACKGROUND:**

      Plaintiff Deidra Perry ("Plaintiff") is a resident of Detroit, Michigan. Defendant is a resident of North York, Ontario, Canada.

      On February 25, 2003, at approximately 7:40 a.m., Plaintiff was traveling in Detroit southbound on St. Aubin, and stopped at the intersection of East Vernor Road. (Compl. ¶¶ 4-5). At that time, Defendant was driving a freight semi-tractor, and was stopped in the through lane on southbound St. Aubin, when he crossed over the right lane to make a right turn onto westbound East Vernor. (*Id.* at ¶¶ 4, 6). As a result, Defendant's vehicle struck the Plaintiff's vehicle, thereby causing a collision. (*Id.* at ¶ 6).

      Plaintiff contends that she incurred severe injuries as a result of this collision, including injuries to her back, neck, left shoulder and left arm; that she suffered multiple contusions and

abrasions. She further contends that she sustained injuries to her lower extremities as well as the muscles, cords, nerves, tendons, and other fibers contained therein; and that she sustained an aggravation, precipitation, lighting and flaring up of underlying and quiescent and dormant conditions so as to precipitate disability. (Compl. ¶ 9).

Plaintiff filed the instant Complaint on October 28, 2004, alleging one Count of negligence against Defendant and DaimlerChrysler Financial Services CD, Inc. ("DaimlerChrysler"). DaimlerChrysler was later dismissed from this case pursuant a stipulated order of dismissal entered on March 23, 2005.

## ANALYSIS

### A. No-Fault Liability under Michigan Law

Pursuant to Mich. Comp. Laws § 500.3135,"[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." M.C.L. § 500.3135(1).

The statute goes on to provide that:

(a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

   (I)  There is no factual dispute concerning the nature and extent of the person's injuries.

   (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement.

M.C.L. § 500.3135(2).

A "serious impairment of bodily function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." M.C.L. § 500.3135(7).

In *Kreiner v. Fischer*, 471 Mich. 109 (2004), the Michigan Supreme Court set forth the analysis for actions brought under the no-fault statute. The supreme court stated that "[t]he starting point in analyzing whether an impairment affects a person's 'general,' i.e., overall, ability to lead his normal life should be identifying how his life has been affected, by how much, and for how long."

Thus, the analysis for whether Plaintiff has a viable no-fault claim proceeds as follows: first, the Court must decide whether there is a "factual dispute concerning the nature and extent of [Plaintiff's] injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function." *Kreiner*, 471 Mich. at 131-32. If the Court finds that there is no such factual dispute, then the Court may continue on to the next step. If the Court finds that there is such a factual dispute, then judgment as a matter of law is not appropriate. *Id.* at 132.

Next, if the Court determines that the issue can be decided as a matter of law, the Court must next decide whether an "important bodily function" of Plaintiff has been impaired. *Id.* Unimportant body functions are not sufficient as a matter law. *Id.* "If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient." *Id.*

If an important body function has been impaired, and it is objectively manifested, the

Court must then determine "the impairment affects [Plaintiff's] general ability to lead [] her normal life." *Id.* In deciding whether Plaintiff's normal life has been impaired, the Court must "compar[e Plaintiff's] life before and after the accident as well as the significance of any affected aspects on the course of the [Plaintiff's] overall life." *Kreiner*, 471 Mich. at 132-33. The Court should make an objective determination whether "any difference between [Plaintiff's] pre-and post-accident lifestyle has actually affected [her] 'general ability' to conduct the course of [her] life. Merely 'any effect' on [Plaintiff's] life is insufficient because a *de minimus* effect would not, as objectively viewed, affect [Plaintiff's] 'general ability' to lead his life." *Id.* at 133. The *Kreiner* court noted that not *every* aspect of a person's life must be effected, but rather the supreme court "merely require[s] that the whole life be considered in determining what satisfies this threshold, i.e., whether an impairment 'affects the person's general ability to lead his or her normal life.'" *Id.* at 133 n.16.

Finally, the *Kreiner* court provided a "nonexhaustive list of factors" to guide the Court's determination whether Plaintiff's general ability to lead a normal life has been affected. These factors include: "(a) the nature and extent of the impairment, (b) the type and length of treatment required, © the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery." *Id.* at 133. The supreme court emphasized that these factors are not meant to be dispositive of any issue, and the totality of the circumstances must be considered in every case. *Id.* at 134.

    **B.**    **Application of *Kreiner* to Plaintiff Perry's Claims**

The Court holds that Plaintiff's ability to lead a normal life has not been significantly affected by the accident in question. Plaintiff did not submit additional evidence to counter

Defendant's argument that she failed to objectively manifest impairment of an important bodily function. Rather, Plaintiff submitted virtually the same documentation in her response that Defendant provided in support of his motion. This documentation includes an emergency treatment note in which the treating physician indicates that, as of February 26, 2003, Plaintiff had "cervical strain status post motor vehicle collision," "motor vehicle strains," and "muscle strain." (Def.'s Mot. Ex. B). The physician noted that Plaintiff "just shows slower range of motion of her left upper extremity compared to her right secondary again to her discomfort." (*Id.*). However, the physician only recommended that plaintiff miss two days of work, and sent Plaintiff home in stable condition. (*Id.*). An MRI performed on March 12, 2003 also came back normal. (Def.'s Mot. Ex. C). Plaintiff returned to work in six weeks. She continues to be employed in that same position and received pay raises. No physician placed restrictions on her, including the one that was suggested by Plaintiff's attorney.

Plaintiff's attending physician, Dr. Bruce Terrio ("Dr. Terrio"), stated that she was disabled from February 25, 2003 to April 16, 2003. Plaintiff consulted Dr. Terrio until February 28, 2003, three days after the accident. Dr. Terrio diagnosed Plaintiff with a "strained neck" and "injury to [her] left arm and shoulder." (Pl.'s Resp. Ex. 3). He stated that Plaintiff was disabled for the above period from doing housework and caring for her personal needs. (Pl.'s Resp. Ex. 4). There is no evidence that Plaintiff received any further restrictions from Dr. Terrio. Plaintiff's counsel conceded during oral argument that she has "treated conservatively." (5/10/06 Hearing Tr. 14:17).

Indeed, given the date of the instant hearing, May 10, 2006, the Court finds it significant that Plaintiff had not treated with a doctor since March, 2005, when she last saw Dr. Ferguson.

5

This undermines Plaintiff's claim of a serious impairment of a significant bodily function, in particular because she has been fully employed, working Monday through Friday, eight hours per day. (Pl. Dep. 90).

In addition, a February 24, 2004 report issued by Dr. D.L. Newman states:

> [Plaintiff] last saw [Dr. Terrio] in November [of 2003]. She does note having a return visit scheduled. She was referred to a rehabilitation specialist for the neck, shoulder, and left arm. She has been unable to see the rehabilitation specialist as of this time. *She has no current medical care scheduled for the future*.

(Pl.'s Resp. Ex. 5) (emphasis added). In her deposition, taken on November 16, 2005, Plaintiff states that the last time she had been seen for her injuries by her own physician, Dr. Ferguson, was approximately six months prior to the date of the deposition, which was taken in May of 2005. (Pl.'s Dep. 88). Further, Plaintiff indicates that Dr. Ferguson did not give Plaintiff a diagnosis at that time. (*Id.*).[1]

Thereafter, an Independent Medical Examine ("IME"), performed on Plaintiff on December 15, 2005, at Defendant's request, indicates that there is "significant evidence of symptom magnification," (Def.'s Mot. Ex. F), indicating that Plaintiff was overstating her limitations compared to the physician's observed functional performance. In fact, the physician reported in his IME that "at this point, [he had] no objective abnormality to correspond with [Plaintiff's] subjective complaints. She can work in an unrestricted capacity. She does not need assistance with activities of daily living. No further treatment is necessary. I see no evidence of

---

[1] Q: At the appointment six weeks ago with Dr. Ferguson, did she give you any type of diagnosis?
A: No, she didn't.

(Pl.'s Dep. 88).

injury related to the event of February 2003." (*Id.* at 7).

2:04-cv-74209-PDB-MKM Doc # 38 Filed 06/02/06 Pg 7 of 7 Pg ID 300

Plaintiff never had her arm in a sling or splint, never had a negative x-ray, and has never had any work restrictions, nor is she currently restricted from doing any activities. Plaintiff even admits during her deposition that her physical activities have not been limited. The only evidence of any remaining injury is her own self-report about her limited ability to type, numbness in her fingers, and pain in her left arm. (Pl.'s Dep. 99-100, 102). Although Plaintiff states that her work suffered because she was unable to use her left arm, Plaintiff also testified that in her latest performance review, she received no criticisms, and that "[a]ll comments [she has] received have been positive." (Pl.'s Dep. 19).

Plaintiff testified at her deposition that she has not requested any of her medical treaters to write any type of accommodation letter or restrictions to her employer, nor have the treaters provided any documentation to her employer that restricts Plaintiff from any activities. (Pl.'s Dep. 105).

The Court finds that Plaintiff's alleged injuries do not constitute an objective manifestation of an important body function that affects her ability to lead a normal life.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Defendant Barria Molina Delfin's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                  S/Paul D. Borman
                                                  PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

Dated: June 2, 2006

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 2, 2006.

                                                  S/Jonie Parker
                                                  Case Manager